IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SIMMONS BANK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| CINCH ENERGY SERVICES, L.L.C., | § | |
| MARK LOPEZ AND FRANK THOMAS | § | |
| SHUMATE, JR., | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF SIMMONS BANK'S VERIFIED ORIGINAL
## COMPLAINT AND APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff Simmons Bank ("Simmons"), successor-by-merger to Spirit of Texas Bank, SSB ("Spirit"), files this Complaint against Defendants Cinch Energy Services, L.L.C. ("Cinch"), Mark Lopez ("Lopez") and Frank Thomas Shumate, Jr. ("Shumate") (collectively, the "Defendants"), and pursuant to Rule 65 of the Federal Rules of Civil Procedure, Simmons files this Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction (the "Application"), and for this Complaint and Application, Simmons would show the Court as follows:

### NATURE OF ACTION

1.      Simmons, as lender, is seeking to recover from Cinch, as borrower, and from Lopez and Shumate, as guarantors, the amounts remaining due and owing to Simmons under a Promissory Note in the original principal amount of $22,750,000.00, and all of the attorneys' fees, expenses and collection costs incurred by Simmons in connection with its efforts to collect the amounts due and owing under the Promissory Note from Defendants.

## SUMMARY OF APPLICATION FOR INJUNCTIVE RELIEF

2.      The Promissory Note is secured by a first lien security interest on certain personal property consisting primarily of vehicles, machinery and equipment as well as a first lien against three tracts of real property inclusive of the tract where a significant portion of the remaining vehicles and equipment are located.  Cinch and Shumate have refused to assemble the collateral and to provide Simmons with access to Simmons' personal property collateral for purposes of selling that collateral.  Despite Simmons's lien, Cinch has transferred one of the three tracts, and on information and belief, including the disappearance of a large portion of vehicles, machinery and equipment, Defendants have sold and are transferring the vehicles, machinery and equipment making such collateral unavailable to Simmons.  Further, Defendants have failed and refused to provide any information regarding the location, status or disposition of a large portion of the machinery, equipment and vehicles, have failed to pay personal property taxes resulting in a seizure of at least one piece of equipment and have failed to maintain the collateral.  In the absence of injunctive relief, Defendants will continue to hide and dissipate Simmons' collateral and the proceeds of the collateral making such collateral and the proceeds unavailable to Simmons.  Simmons does not have an adequate remedy at law because, on information and belief, the value of the collateral and the financial wherewithal of Defendants is insufficient to pay all or even a substantial portion of the outstanding balance of the Promissory Note. Simmons seeks a temporary restraining order to enjoin Defendants from transferring or dissipating any of Simmons' collateral or the proceeds from the sale or lease of any of Simmons' collateral and from denying Simmons and its designees access to the collateral and to the real property for purposes of selling the personal property collateral as agreed to in the Security Agreement and Deed of Trust (defined below) and as permitted by Texas Business & Commerce Code §9.609.

## PARTIES

3.      Simmons is an Arkansas chartered bank with its main office and principal place of business located at 501 S. Main Street, Pine Bluff, Arkansas 71601.

4.      Cinch is a Texas limited liability company that can be served with process by serving its registered agent, Mark Lopez, at his usual residence address located at 52 Co. Rd. 3011, Edna, Texas 77957.  The only members of Cinch are Lopez, a citizen of Texas, and Shumate, a citizen of Texas or Florida.  Accordingly, Cinch is either a citizen of Texas or a citizen of both Texas and Florida for purposes of diversity jurisdiction.

5.      Lopez is a citizen of Texas who can be served with process at his usual residence address located at 52 Co. Rd. 3011, Edna, Texas 77957.

6.      Shumate is a citizen of either Florida or Texas who can be served with process at his residence address in Florida located at 290 N. Washington Drive, Sarasota, Florida 34236 or his residence address in Texas located at 2200 Country Road 413, Falls, Texas 78113.

## JURISDICTION

7.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332(a), because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.  For purposes of diversity jurisdiction, Simmons is a citizen of Arkansas, Cinch is a citizen of either Texas or Texas and Florida, Lopez is a citizen of Texas, and Shumate is a citizen of either Texas or Florida.

## VENUE

8.      Venue in this district is proper pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Texas, Houston Division.  Specifically, the Loan (defined below) was made and originated in the Southern District of Texas, Houston Division, the Note, the Loan Agreement

and the Guaranties (as those terms are defined below) are performable in the Southern District, of Texas, Houston Division, and in the Loan Agreement and in the Guaranties, Defendants agreed to venue in the Southern District of Texas, Houston Division and waived any argument that the Southern District of Texas, Houston Division is an inconvenient forum.

## FACTUAL BACKGROUND

9.      Pursuant to a Loan Agreement dated December 9, 2020, by and between Cinch, as Borrower, and Simmons' predecessor, Spirit, as Lender, and containing a Ratification by Obligated Parties, signed by Lopez and Shumate, as Guarantors (the "Loan Agreement"), Spirit agreed to make a Main Street Lending Program term loan to Cinch in the original principal amount of $22,750,000.00 (the "Loan").   A true and correct copy of the Loan Agreement is attached hereto as Exhibit "A."

10.      The Loan is evidenced by a Promissory Note (Term Loan) dated December 9, 2020, executed by Shumate on behalf of Cinch and payable to the order of Spirit in the original principal amount of $22,750,000.00, together with interest on the outstanding principal as provided therein (the "Note").   A true and correct copy of the Note is attached hereto as Exhibit "B."

11.      The payment and performance of all of the indebtedness and obligations of Cinch to Spirit, and its successors and assigns, under the Loan, the Loan Agreement, the Note and other documents relating to the Loan (collectively, the "Loan Documents") are absolutely and unconditionally guaranteed by Lopez, pursuant to a Guaranty dated December 9, 2020, and executed by Lopez (the "Lopez Guaranty"), and by Shumate pursuant to a Guaranty dated December 9, 2020, executed by Shumate (the "Shumate Guaranty").   A true and correct copy of the Lopez Guaranty is attached hereto as Exhibit "C," and a true and correct copy of the Shumate

Guaranty is attached hereto as Exhibit "D."  The Lopez Guaranty and the Shumate Guaranty are referred to herein collectively as the "Guaranties."  Based on the Guaranties, Lopez and Shumate are jointly and severally liable for all of the indebtedness and obligations of Cinch under the Note and other Loan Documents.

12.     The obligations and indebtedness of Cinch under the Loan and Loan Documents are secured in part by all of the rights, title and interests of Cinch in certain Collateral, as that term is defined in a Security Agreement dated December 9, 2020, executed by Cinch, as Borrower and Grantor, in favor of Spirit, its successors and assigns (the "Security Agreement"), and which Collateral includes, but is not limited to, all Equipment, Insurance, Inventory, Collateral Records, Supporting Obligations and Proceeds of the foregoing (as those terms are defined in the Security Agreement). A true and correct copy of the Security Agreement is attached as Exhibit "E."

13.     Additionally, the obligations and indebtedness of Cinch under the Loan and Loan Documents are secured in part by certain real property located in Nueces County, Texas and all improvements and fixtures thereon and all leases relating thereto (the "Property") pursuant to the terms of a Deed of Trust, Security Agreement, Assignment of Rents and Leases, Fixture Filing and Financing Statement dated December 9, 2020, executed by Cinch, as Grantor, for the benefit of Spirit, and its successors and assigns (the "Deed of Trust"). A true and correct copy of the Deed of Trust is attached as Exhibit "F."

14.     On April 9, 2022, Spirit merged with and became part of Simmons. Simmons is the owner and holder of the Note, the Administrative Agent on behalf of the other lender owning an interest in the Loan, the secured party in the Security Agreement, the beneficiary under the Deed of Trust, and the owner and obligee of the Guaranties.

15.     An Event of Default occurred under the Note and Loan Agreement as a result of Cinch's failure to pay the monthly payment due on October 9, 2023, in an amount equal to all of the accrued but unpaid interest then due as required by Section 2(a)(i) of the Note.

16.     An additional Event of Default occurred under the Note and Loan Agreement as a result of Cinch's failure to pay the monthly payment due on November 9, 2023, in an amount equal to all accrued but unpaid interest then due as required by Section 2(a)(i) of the Note.

17.     By letter dated December 4, 2023, Simmons, by and through its attorneys, Jackson Walker LLP, provided formal notice to Cinch, as Borrower, and to Lopez and Shumate, as Guarantors, of the Events of Default arising out of Cinch's failure to pay the monthly interest payments due on October 9, 2023 and November 9, 2023.   In that letter, Simmons notified Cinch, as Borrower, and Lopez and Shumate, as Guarantors, of additional Events of Default that would occur if Borrower did not timely pay the monthly interest payment due on December 9, 2023, and the principal reduction payment in an amount equal to 15% of the outstanding principal due on December 9, 2023, and Simmons provided notice to Defendants that an additional Event of Default would occur if Cinch failed to deliver the 2022 year-end financials and tax returns for Lopez and Shumate that would have been past due under the Loan Agreement at that time but for Simmons' agreement to extend the delivery deadline for those items to December 15, 2023.

18.     Notwithstanding the December 4, 2023, notice of default, Cinch failed to pay the past due monthly interest payments referenced in the December 4, 2023 letter, and in addition, Cinch failed to deliver the 2022 year-end financials and tax returns for Lopez and Shumate on or before December 15, 2023 or to pay the monthly interest payment and the 15% principal

reduction payment due on December 9, 2023 thus constituting additional Events of Default under the Note, the Loan Agreement and the Loan.

19.     Based on the Events of Default specified in the December 4, 2023 letter, the Note was accelerated, and all outstanding principal and accrued but unpaid interest declared to be immediately due and payable.

20.     By letter dated December 20, 2023, Simmons, by and through its attorneys Jackson Walker LLP, provided notice of the acceleration to Cinch, as Borrower, and to Lopez and Shumate, as Guarantors, and therein, Simmons made demand upon Defendants for the immediate payment of the outstanding principal, accrued but unpaid interest, costs and expenses and other amounts then due and owing under the Loan, the Note and Loan Agreement.

21.     Despite such notice and demand, Defendants failed and refused, and continue to fail and refuse to pay the amounts due and owing to Simmons under the Note.

22.     Simmons engaged Jackson Walker LLP to assist in connection with Simmons' efforts to collect the amounts due and owing under the Note including, but not limited to, preparing the default correspondence referenced above.  Simmons also engaged Winstead PC to assist it in collecting the amounts due and owing under the Note including, but not limited to, instituting litigation against Defendants for the amounts due and owing under the Note. Simmons agreed to pay both firms reasonable and necessary attorneys' fees for their services.

23.     After allowing all just and lawful payments, offsets and credits, there remains due and owing under the Note as of March 28, 2024, the outstanding principal balance of $21,078,818.44, accrued but unpaid interest in the amount of $1,290,803.00 and unpaid late charges in the amount of $73,428.68.  Interest continues to accrue on the outstanding principal

balance at the current per diem rate of $7,864.85261. The foregoing amounts exclude attorneys' fees and other collection costs incurred or to be incurred by Simmons.

24.     Section 4.1(a) of the Security Agreement obligates Cinch, by request by Simmons to take actions that Simmons "may reasonably request . . . to enable [Simmons] to exercise and enforce [Simmons] . . . rights and remedies . . . with respect to any Collateral.  In Section 5.4(a) of the Security Agreement, Cinch agreed that upon an Event of Default, Cinch "will at its expense and upon request of [Simmons] forthwith, assemble all or a part of the Collateral as directed by [Simmons] and make it available to [Simmons] at a place designated by [Simmons] which is reasonably convenient to both parties for public or private sale, at any of [Simmons'] offices or elsewhere . . .."

25.     Section 5.4(c) of the Security Agreement grants Simmons, "together with any persons Simmons may designate" to, at Cinch's cost and expense, "verify under reasonable procedures the delivery, amount, quality, quantity, value, conditions and status to Collateral including, in the case of Collateral in the possession of any third-person, by contacting the third-person possessing such Collateral for the purpose of making such a verification."

26.     In connection with the origination of the Loan, Spirit obtained an appraisal of the machinery, equipment and vehicles which comprise the majority of the Collateral provided by WFA Collateral Review Services and dated effective as of October 12, 2020 (the "Initial List"), and which valued approximately 314 items with an orderly liquidation value of $21,784,000.00. Included in the Initial List were machinery, equipment and vehicles financed by third parties. Simmons paid off approximately $13,300,000 in debts of Cinch, including the third party financing secured by those items of machinery, equipment and valuables, and Spirit received titles to many of the equipment.

27.     Approximately 49 items of the machinery, equipment and vehicles were sold by Cinch with Simmons' consent and released from Simmons' lien in exchange for the delivery of the net proceeds to Simmons to be applied to the debt.

28.     There are vehicles, machinery and equipment located at the Property owned by Cinch and which secure the Loan.  Other vehicles, machinery and equipment are located at 1806 S. Country Road 1101, Midland, Texas 79706, a property owned by Elite Real Estate Holdings, Ltd. and leased to Cinch (the "Midland Property"), and some vehicles, machinery and equipment are located at a ranch in Karnes County, Texas owned by FTS Ranch LLC, an entity controlled by Shumate (the "Ranch").

29.     In Section 9.1(b) of the Deed of Trust, Cinch agreed that Simmons, either in person, by agent or by receiver, is authorized to enter and take possession of the Property or any part thereof. Similarly, in Section 9.1(f) of the Deed of Trust, Cinch agreed that upon an Event of Default, Simmons could enter upon and take possession of all or any portion of the Property, exclude Cinch and all persons claiming under Cinch and use, administer, manage, operate and control the Property without liability to Cinch for any loss or damage other than damages that are a sole result of the willful misconduct or gross negligence of Simmons.  Furthermore, consistent with the Security Agreement, in Section 9.1(d) of the Deed of Trust, Cinch authorized Simmons to enter upon any premises of Cinch "to take possession of, assemble and collect the Collateral, or . . . to render it unusable" and to require Cinch "to assemble the Collateral and make it available at a place [Simmons] designates . . . to allow [Simmons] to take possession or dispose of the Collateral . . .."

30.     After numerous requests by Simmons, Cinch permitted an inspection of the machinery, equipment and vehicles located at the Property, the Midland Property and the Ranch.

On February 5, 2024, Amy Moore of Simmons and representatives of Rosen Systems met with Tim Pollard of Cinch at the Property to discuss the status of Cinch, and for Rosen Systems to inspect the Collateral. At that time, Rosen Systems inspected the vehicles, machinery and equipment located at the Property, the Midland Property and the Ranch. There were approximately 217 items of vehicles, machinery and equipment at the three locations. During the inspection of the Property, Simmons and Rosen Systems were given a copy of a 2023 Cinch Depreciation Schedule V020923 listing approximately 368 vehicles, machinery and equipment, other fixed assets, and personal property (the "Report"). Numerous items listed in the Initial List were not included in the Report.

31.     The Initial List listed approximately 314 items of vehicles, machinery and equipment. Of the 314 plus items included in the Initial List, 49 items were sold since the inception of the Loan with Simmons' consent, and only approximately 103 items from the Initial List were accounted for by Rosen System during the inspection. On information and belief, the orderly liquidation value of the 103 confirmed items from the Initial List located during the inspection is $4,300,000.

32.     A total of approximately 217 items of vehicles, machinery and equipment were made available for inspection by Simmons at the three locations. Several VIN plates were missing from several vehicles, machinery and equipment items, and for others, the plate was not readable. Of the 314 items on the Initial List, only 103 were confirmed during the inspection. Even assuming that all of the 217 items made available for inspection are part of Simmons' Collateral and included on the Initial List, and even after subtracting the 49 items sold with Simmons' consent, there would be a minimum of 48 items that are missing and unaccounted for (314-49-103 = 48). In actuality, 162 items from the Initial List (314-49-103 = 162) were not

found at any of the three locations inspected by Simmons and Rosen Systems, could not be identified due to the missing or partially missing VIN numbers and were not accounted for by Cinch. Also, included in the remaining 114 items at the Property and the Midland Property and included in the Report were several vehicles and equipment financed by third parties after the closing of the Loan and after Simmons paid off approximately $13,300.000.00 in debts of Cinch.

33.    On February 15, 2024, Rosen Systems sent an email to Tim Pollard of Cinch asking about the various vehicles, machinery and equipment included in the Initial List and that were not present during the physical inspection on February 5, 2024, or otherwise accounted for by Cinch. Mr. Pollard, who is also Shumate's personal representative and the Executive Vice President of Cinch Wireless Services LLC ("Cinch Wireless"), a subsidiary of Cinch, failed to respond to Rosen Systems' inquiries. Simmons called and emailed Mr. Pollard regarding the information requested by Rosen Systems and regarding the 2023 year-end financial statement that Cinch was required to provide to Simmons and other information requested by Simmons. Mr. Pollard failed to respond to Simmons' calls and emails.

34.    During the February 5, 2024 inspection, Cinch's accountant, Loretta Higgins, CPA, told Amy Moore of Simmons that Cinch's year-end financial statements would be completed within the next 2 to 3 weeks, and during the February 5, 2024 inspection, Mr. Pollard discussed Cinch's ongoing operations and the number of employees working at Cinch. Mr. Pollard also informed Simmons that Cinch Wireless filed bankruptcy in December 2022.

35.    On February 26, 2024, Amy Moore of Simmons contacted Shumate regarding the missing vehicles, machinery, equipment and other fixed assets, and asked when Simmons would receive Cinch's year-end financial statements and Shumate's updated financial statement for calendar year ending 2023. In response to Ms. Moore's questions regarding the year-end

financial statements, Shumate's personal financial statement and information regarding the location and status of Simmons' Collateral, Mr. Shumate told Ms. Moore that Simmons "will get nothing," and he refused to provide any information.  In that call, Mr. Shumate also stated that he had a potential buyer for some or all of the equipment and vehicles and that he did not need to ask Simmons every time Cinch intended to sell a vehicle or a piece of equipment even if it was Simmons' Collateral.  Additionally, in that call, Shumate told Ms. Moore of Simmons that Cinch had ceased operations in early 2023 and that there were no remaining Cinch employees.  That was the first time that Simmons learned that Cinch had shut down its business, and Shumate's statement contradicted Mr. Pollard's statements made during the February 5, 2024 inspection.

36.     On March 1, 2024, Ms. Moore sent a letter to Shumate and Mr. Pollard regarding Cinch's failure and refusal to provide information and access to Simmons' Collateral and confirming the statements made by Shumate in the February 26 call.

37.     On March 5, 2024, Simmons learned that a tax warrant had been issued and served in a case styled Jackson County, et al v. Cinch Energy Services LLC, and numbered TAX08960, pending in the 135th Judicial District Court of Jackson County, Texas (the "Tax Warrant"), and that based on Cinch's failure to pay personal property taxes totaling $76,431.15, a CAT excavator, which is a part of Simmons' Collateral, had been seized and is being held pending a tax sale.  A true and correct copy of the Tax Warrant is attached hereto as Exhibit "G."  As reflected in the Tax Warrant, the seized excavator was found at Lopez's home in Edna, Texas and the "Cinch sticker logo" on the excavator had been removed.

38.     Without Simmons knowledge or consent, on February 14, 2022, Cinch conveyed one of the three tracts comprising the Property to 2022 Heinsohn, LLC in violation of the terms of the Deed of Trust.  Simmons recently learned of that transfer when Simmons was reviewing

title for the Property. A true and correct copy of the of the Warranty Deed signed by Shumate on behalf of Cinch is attached hereto as Exhibit "H."  Simmons also recently learned that Cinch is not paying ad valorem taxes for the Property and other properties, that $65,599.52 is owed by Cinch in past due taxes, interest and fees in Nueces County and that Cinch owes personal property taxes for equipment and vehicles included in the Collateral in Nueces County totaling $20,405.84.

39.     By letter dated March 8, 2024, a copy of which is attached hereto as Exhibit "I," Simmons, by and through its counsel Winstead PC, made demand upon Cinch to assemble the Collateral at the Property and the Midland Property, to provide access to both locations to Simmons in order for Simmons to sell the Collateral at those locations in accordance with Texas Business & Commerce Code §9.609, to identify a contact person who will be available to permit access or to provide keys and any access codes needed for access, and to provide all keys, key codes and other similar items with respect to any of the vehicles, machinery and equipment included in the Collateral and to do so by 5:00 p.m. on March 13, 2024.  Despite such notice, Cinch failed and refused to provide the requested access and refused to deliver the keys or to identify a point person to provide access for Simmons to exercise its rights and remedies under the Loan Documents and applicable law.

40.     By email dated March 13, 2024, Amy Moore sent another copy of the March 8, 2024 letter to Shumate and Mr. Pollard requesting Cinch's cooperation in assembling the Collateral at the Property and the Midland Property to enable Simmons to conduct a private or public sale of the Collateral at those locations.  Cinch failed and refused to respond.

## CAUSES OF ACTION

### Claim on Note

41.     The Note was accelerated as a result of Events of Default by Cinch, and despite notice and demand, Cinch has failed and refused to pay the amounts due and owing to Simmons under the Note.

42.     Simmons seeks a judgment from and against Cinch for all of the amounts due and owing under the Note together with pre-judgment interest and post-judgment interest as allowed by law.

### Attorneys' Fees from Cinch

43.     Section 10.1 of the Loan Agreement obligates Cinch to pay to Simmons "all reasonable and out-of-pocket expenses incurred" by Simmons including, but not limited to, all "reasonable fees, charges and disbursements of counsel . . . in connection with the . . . administration of this [Loan] Agreement, and the other Loan Documents, . . . the enforcement or protection of [Simmons'] rights, . . . or during any workout, restructuring or negotiations in respect of [the] Loan." Additionally, in Section 11 of the Note, Cinch agreed to reimburse Simmons "on demand for all costs, expenses, and fees (including reasonable expenses and fees of legal counsel) incurred by [Simmons] in connection with the transactions contemplated by this Note, including . . . the enforcement of the rights of [Simmons] . . . under this Note."

44.     Based on the terms of the Loan Agreement and Note, Cinch is liable to Simmons for all collection costs, expenses and attorneys' fees incurred by Simmons in connection with Simmons' efforts to enforce and collect the Note including, but not limited to, all such collection costs, expenses and attorneys' fees incurred by Simmons prior to the filing of this litigation and all collection costs, expenses and attorneys' fees incurred by Simmons in connection with this

litigation, and Simmons seeks a judgment from and against Cinch for all such collection costs, expenses and attorneys' fees.

45.     Alternatively, pursuant Texas Civil Practice & Remedies Code §38.001 et. seq., Cinch is liable to Simmons for all attorneys' fees incurred by Simmons in this litigation, and Simmons seeks a judgment from and against Cinch for all such attorneys' fees.

## Claim on Guaranties

46.     Pursuant to their respective Guaranties, Lopez and Shumate are jointly and severally liable for all the amounts due and owing to Simmons under the Note.

47.     Simmons seeks a judgment from and against Lopez and Shumate, jointly and severally, for all of the amounts due and owing under the Note together with pre-judgment interest and post-judgment interest as allowed by law.

## Attorneys' Fees and Collection Costs from Guarantors

48.     The "Obligations" of Cinch guaranteed by Lopez and Shumate pursuant to their respective Guaranties include the attorneys' fees, expenses and collection costs which Cinch is obligated to pay to Simmons pursuant to the terms of the Loan Agreement and the Note, and therefore, Lopez and Shumate are jointly and severally liable with Cinch for all such attorneys' fees, expenses and collection costs.  Simmons seeks a judgment from and against Lopez and Shumate, jointly and severally, for all such attorneys' fees, expenses and collection costs.

49.     Alternatively, pursuant to Texas Civil Practice & Remedies Code §38.001, et. seq., Lopez and Shumate are liable for all attorneys' fees incurred by Simmons in connection with this litigation, and Simmons seeks a judgment from and against Lopez and Shumate, jointly and severally, for all such attorneys' fees.

## APPLICATION FOR INJUNCTIVE RELIEF

### Application for Temporary Restraining Order

50.     Rule 65(b)(1) permits the issuance of a temporary restraining order where the "specific facts in an affidavit or verified complaint clearly show that immediate, irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition . . .." Fed. R. Civ. P. §65(b)(1).  Injunctive relief is authorized by general principles of equity, federal statutes and state law.  eBay Inc. v. MercExchange, L.L.C, 547 U.S. 388, 391 (2006).  To obtain injunctive relief, a plaintiff must establish (1) an irreparable injury, (2) the lack of an adequate remedy at law, (3) the likelihood of success on the merits, (4) the balance of hardships, and (5) the effect on the public interest.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

51.     Based on the February 5, 2024 inspection and the number of missing and unaccounted for vehicles, machinery and equipment, Cinch's transfer of a portion of the Property and apparent disposition of Simmons' personal property Collateral, Cinch's failure to pay taxes resulting in the Tax Warrant and seizure of portion of Simmons' Collateral, Cinch's failure to provide access and to assemble the Collateral in breach of the Security Agreement and Deed of Trust, in the absence of injunctive relief, Defendants will continue to take actions to hide, secrete and dissipate Simmons' Collateral thus making the Collateral unavailable to Simmons.  If such acts are allowed to continue, Simmons does not have an adequate remedy at law.  The value of the Collateral which is not being maintained continues to diminish with the passage of time.  Moreover, to the extent Collateral is sold by Cinch and the proceeds dissipated, Collateral is seized and sold at tax sales or otherwise disposed of, such Collateral will be unavailable to be sold at an Article 9 sale to reduce the indebtedness under the Note.  On information and belief, Cinch lacks any unencumbered assets other than the Collateral and the Property which secure

Simmons' debt, such that the Collateral and Property represent the only viable sources of recourse to Simmons against Cinch.  Moreover, on information and belief, including, but not limited to, information obtained from litigation searches, Shumate and Lopez do not have assets available in Texas for execution with which to satisfy all or a substantial portion of the amounts due under the Note or the likely deficiency remaining due following the sale of the Property and the Collateral.

52.     Simmons has established the likelihood of success on the merits.  Moreover, the balancing of the hardships falls in favor of Simmons because Simmons is merely seeking what it has the right to do under the Loan Documents and what Cinch expressly agreed to in the Security Agreement, the Deed of Trust and other Loan Documents. According to Shumate, Cinch ceased operations over a year ago, terminated employees, and is no longer an active business, and therefore, Cinch will not be significantly harmed based on the seizure and sale of Simmons' Collateral which Cinch is not using.  There is no public policy or public interest impacted by the injunctive relief sought by Simmons.

53.     Based on the facts set forth in Paragraphs 9 through 41 and 51 and 52 above, and the foregoing authorities, Simmons requests that it be awarded a temporary restraining order:

      (a)     enjoining Defendants, their respective agents, servants, employees and representatives and all other persons in active concert or participation with them, who receive actual notice of the Court's order by personal service or otherwise (collectively, the "Enjoined Parties") from hiding, secreting, selling, conveying, transferring or disposing of any of the Collateral and any proceeds from any sales or leases of any portion of the Collateral;

      (b)     enjoining the Enjoined Parties from in any way interfering with Simmons' right to obtain possession of, and control of the Collateral at the Property, the Midland Property or another location during weekdays from 9:00 a.m. to 5:00 p.m.;

      (c)     enjoining Defendants from endorsing, negotiating, transfer, assigning or in way paying or using the proceeds from the sale or lease of any of the

Collateral collected or received by or on behalf of the Enjoined Parties other than:

    (i)     for payment to Simmons' to be applied to the amounts due and owing under the Note, or; and

    (ii)    payment to the registry of the Court to be held pending further order from the Court.

(d)    requiring the Enjoined Parties to relocate any of the vehicles or equipment included in the Collateral not currently located at the Property or the Midland Property to either the Property or Midland Property, and to the extent any vehicle or equipment cannot be relocated due to its physical condition, to provide to Simmons information regarding its current location and access to such location to Simmons or its designee;

(e)    requiring the Enjoined Parties to provide keys and/or access codes to permit access for Simmons and Rosen Systems, as Simmons' designee, to the Property and the Midland Property including, but not limited to, keys for any lock on any door, gate or fence to such property during weekdays from 9:00 a.m. to 5:00 p.m., or to make available contact persons during those hours who will provide such access;

(f)    enjoining the Enjoined Parties from failing to provide keys, key codes, and similar items with respect to any of the vehicles or equipment included in the Collateral, including such vehicles and equipment located at the Property and the Midland Property; and

(g)    enjoining the Enjoined Parties from interfering with any sale of any portion of the Collateral by or on behalf of Simmons at the Property, the Midland Property or other locations and from interfering with the removal of any such Collateral from those locations by Simmons, Rosen Systems or any purchaser at any sale by or on behalf of Simmons.

### Application for Preliminary Injunction

54.    Simmons seeks a preliminary injunction extending the effect of the temporary restraining order until a judgment is entered in this case.

**Permanent Injunction**

55.     Simmons seeks a permanent injunction following the trial of this case to continue the effect of the preliminary injunction until the satisfaction of all of the indebtedness and obligations of Cinch under the Note.

**CONDITIONS PRECEDENT**

56.     All conditions precedent to the relief requested by Simmons in this Complaint have occurred or have been performed.

**RESERVATION OF RIGHTS**

57.     Simmons reserves all rights and remedies available to Simmons in the Loan Documents and under applicable law including, but not limited to, all rights and remedies under the Security Agreement or otherwise with respect to the Collateral and all rights and remedies under the Deed of Trust or otherwise with respect to the Property.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Simmons Bank requests that Defendants Cinch Energy Services, L.L.C., Mark Lopez and Frank Thomas Shumate, Jr. be served with process, and that without notice to Defendants, that the Court enter a temporary restraining order as requested herein, that following a hearing, the Court issue a preliminary injunction as requested herein, and that following trial, Simmons be awarded a judgment from and against Defendants, jointly and severally, for all of the amounts due and owing under the Note, for pre-judgment interest, for all expenses, collection costs and attorneys' fees incurred by Simmons, for all costs of court incurred by Simmons, for post-judgment interest as allowed by law and for a permanent injunction.  Simmons requests such other and further relief both at law and in equity as to which it may show itself to be justly entitled.

Respectfully submitted,

**WINSTEAD PC**

By:   */s/ Brian T. Morris*
   Brian T. Morris
   Southern District No. 24372
   State Bar No. 14469600
   bmorris@winstead.com
   500 Winstead Building
   2728 N. Harwood Street
   Dallas, Texas 75201
   (214) 745-5400 / (214) 745-5390 – FAX

**ATTORNEY-IN-CHARGE FOR PLAINTIFF
SIMMONS BANK**

**OF COUNSEL FOR PLAINTIFF:**

WINSTEAD PC

Nicholas T. Stevens
Southern District No. 3792367
State Bar No. 24125422
nstevens@winstead.com
JPMorgan Chase Tower
600 Travis Street, Suite 5200
Houston, Texas 77002-2900
(713) 650-2600 / (713) 650 - 2400 – FAX

## VERIFICATION

STATE OF TEXAS        §
                             §
COUNTY OF DALLAS    §

BEFORE ME, the undersigned authority, on this day personally appeared Amy Moore, who is personally known to me and who, after first being duly sworn according to law on her oath, deposed and said that she has read the foregoing Verified Original Complaint and Application for Injunctive Relief and that the factual statements contained in Paragraphs 9 – 41 and 51 and 52 are true and correct based upon her personal knowledge unless otherwise stated.

_____
AMY MOORE

ACKNOWLEDGED, SUBSCRIBED AND SWORN TO before me on this ___ day of April, 2024, to certify which witness my hand and official seal of office.

_____
NOTARY PUBLIC / State of Texas

Cynthia L Mida
Notary Public, State of Texas
My Comm. Exp. 04/27/2025
Notary ID 6492-2